Good morning. May it please the court, Jonathan Soglin on behalf of the appellant Gregory Johnson. Before addressing the nuances of the instructional error in this case, I wanted to set the stage by identifying what we know about how the jury saw the case. Then I'll move on to the nuances of the instructional error argument. And time permitting, I do want to also address why the court should expand the certificate of appealability to include the evidentiary error issue regarding the so-called bad date journal. So this was a case, of course, where the prosecution said this is a felony murder, robbery, felony murder. Defense defends it as a case of sexual assault, imperfect self-defense or self-defense. Also a heat of passion defense was presented. So what do we know about how the jury saw this? Well, this is often we don't know what a jury, how a jury perceives a case. But this case we do. There's a number of indications in the record of how the jury saw the case. One is that we know the jury deliberated for over seven hours. This is despite the fact that there's only really one issue for the jury in terms of getting to felony murder. This is one count charge of murder. Prosecution theory is that it's a felony murder by means of robbery. The only other count charge is the robbery itself. So there's only – that's subsumed within the felony murder. So you have a single count really for the jury to consider. But nevertheless, it took seven hours of deliberations to consider it, seven and a half hours. The jury also asked for a readback of testimony. And this is – deliberations proceeded over three separate days. On the second day, which was one full day of deliberating, they, in the middle of the day around noon, asked for a readback of testimony. They only asked for the defendant's testimony to be read back. Now, there's a case where the prosecution said the defendant is not credible. He's made multiple statements that were different from each other. The jury didn't ask to hear the statements or testimony of other witnesses about appellant's other statements. They only asked for his trial testimony. And his trial testimony is a testimony that essentially says this was not a robbery. This was a killing that was in response to a sexual assault. They wanted to hear that back. And if you look at Excerpt Record, page 574, a critical – critical document in this case, it's the minutes from that deliberations date. It shows that the court reporter went in, read back testimony for 30 minutes, jury deliberated for about another 20, 25 minutes, presumably talking about what they had just heard regarding the defendant's testimony. And then immediately – They could find both. Theoretically, a jury could do that. In this case, the defense theory was that the taking of property, the intent for that was formed later. And critical to that is the jury's perception of that is the question they asked of the court shortly after having the defendant's testimony read back to them. And they asked this question about the element of robbery, which is that the taking – there's an element in the State of Instructions that said the taking was accomplished either by force or fear. And they want to know if accomplished means the same thing as enabled. Enabled isn't very much. The killing certainly enabled them walking away, taking property once the victim is deceased. If the jury saw and considered that the defendant's testimony and facts of the case supported a finding that maybe all that the taking of property. But, counsel, the California court of appeal addressed the point of whether or not the instructions were sufficient to allow the jury to determine whether or not the formation of specific intent preceded the use of force. California court of appeal said that the instructions were adequate, right? That's correct. So this was a California court interpreting California jury instructions. Tell us how we can give habeas relief, what supreme court authority would allow us to give habeas relief in view of that court of appeal finding interpreting California instructions. The basic supreme court authority is stated in numerous cases, including Milton v. McNeil, U.S. v. Gaudin, is the right to a jury verdict based on all of the elements. And that requires the court to set the jury must be instructed on all of the elements of the charge of offense. They were. Said that the jury was instructed on all the elements. So how can we determine, you know, with the deference we give under AEDPA and the additional deference we give to state court interpretation of state law, how can we say that that ruling was contrary to or an unreasonable application of Federal law? I think it's actually both. It's contrary to because it's contrary to the supreme court's Bolenbach decision, which says you have to look at, on a particular topic, specific instructions on a point. Well, let's back it up. Estelle v. McGuire says that we normally do not visit the question of state law rulings. So we've got that hurdle we overcome. Then we've got a principle that says the only time a Federal court can do it is if we find a due process violation, that the instruction so infected the fairness of the trial that the defendant didn't get a fair trial. But we've got a jury instruction on California elements of robbery that the California Court of Appeals says adequately instructed the jury on the elements of the crime. Then how do we conclude by looking at those instructions approved by the state courts that they were erroneous as a matter of law and so infected the proceedings that your client didn't get a fair trial and, therefore, his constitutional rights were violated? Yeah. The state court's take on it was simply unreasonable. There's a number of reasons why. One is indications of that. One is that 9.40.2, the instruction, the only instruction that really talked about the temporal relationship of when the specific intent arises, says it only has to arise at the time of the taking of property. It's not simply incorrect. It has to arise at the time of the use of force. But don't we we have to look at all of the instructions as a whole, correct? Correct. And the jury was instructed. There's a mental state instruction. There's an instruction with regard to murder during the commission of a felony. There's an instruction on felony murder. There's an instruction on robbery. There's an instruction that tells them that you have to form the intent before at the time. And if we look at all of those, which I assume is what the California Court of Appeal looked at, you're asking us to declare that they're all erroneous and, therefore, he didn't get a fair trial under the Federal Constitution? Not that all the instructions are erroneous, but that as a whole, they did not instruct on this correctly on the temporal element of there was no instruction saying that the intent has to be present at the time of the use of force. The only instruction that says anything about that is 9.40.2, which says the intent has to be present at the time of the taking of the property. It's critical that it be present at the time of the use of force. In fact, that's what the defense was in this case, is that the killing was motivated by some other reason that afterwards they decided to take the property. 9.40.2 is the specific instruction. Bolenbach, U.S. Supreme Court authority, says if there's a specific instruction on a point of law, you know, it's on that element, that it has to – the court has to look at that instruction on the point, not at the other instructions that don't address it. Look at the specific rather than the general. But the other instructions do – I mean, I'm looking at 9.40, which is the general element that the property has to be taken from the immediate presence and against his will and with the specific intent to deprive. And I think you referenced earlier in your argument, if the killing was essentially part and parcel of immobilizing the victim so that he could not frustrate the robbery, the evidence would, I think, support the juror's determination that the specific intent was what they had to decide. Right. There's evidence both ways on when the intent formed. And the defense was – So then we assume the jury got it right. Well, we can't assume that. The jury's question indicates that they thought all they – maybe the killing only enabled the taking of the property. The jury is looking at this and saying it's not a greater nexus between the killing and the taking. But it's not inconsistent with a jury finding that the intent had been formed before but that the robbery was carried out by incapacitating the victim so that he couldn't frustrate the commission of the robbery. I don't see the inconsistency in – as you are arguing in the jury's question. Well, they're asking for some reason. They see some difference between accomplished by force and enabled by force. Well, you can accomplish a robbery by simply frightening the victim into relinquishing control. You can perpetuate the robbery by killing the victim so that he can't stop you from doing it. It's just different means of committing the same offense. Right. But they're asking if it was a difference between accomplishing and enabling. They thought there was a difference between the two words and the meaning of them. And asked if they thought it was only enabling. Enabling suggests that they thought it only made the taking of property possible rather than being a greater nexus between the killing and, you know, the killing demotivating the taking of property. I guess we've used up your time, so I'm not going to pursue this. Why don't we hear from the plaintiffs? May it please the Court. Peggy Ruffray from the Attorney General's Office for Respondent. It's our position that this was an absolutely standard application of the Estelle v. McGuire reasonable likelihood test. The State Court found that the instructions adequately informed the jury of the timing element for robbery, because when read all together, the instructions indicated to a reasonable juror that the defendant did have to possess the specific intent to steal prior or during the application of force. Now, that was from 9.40, which said the taking had to be from the immediate presence of the victim and accomplished by means of force or fear. And it specifically said immediate presence is the area within the victim's reach or control. Now, if the person is already dead, then those items can't be within their reach or control. In addition, 9.40.2 said that the specific intent must be formed at or before the time of the taking. So when you read all of those instructions together, the State Court said, it's clear that if the defendant had already killed the victim, he would not be taking property from his immediate presence. Thus, it was also clear that the defendant had to have formed the intent to steal before he killed the victim. So that's how the State Court put together the element from all of these instructions that were given to the jury that was clearly reasonable and, therefore, was a reasonable application of the Estelle v. McGuire test. And as far as the jury question goes, the judge answered the question correctly and defined what accomplished meant. Presumably, that cleared up any uncertainty the jury had that there might have been some difference. And there's no reason to believe they didn't follow that in applying it in 9.40, which used the word accomplished. If there are no other questions, we'll submit. Thank you. I think not. Okay. The case is argued as submitted.
judges: Fletcher B. , Tallman, Rawlinson